## ST. LOUIS REFRIGERATING & COLD STORAGE CO. v. UNITED STATES.

### No. 43110.

Court of Claims.

March 2, 1942.

482

Walter W. Ahrens, of Washington, D. C. (John J. Hickey, of Washington, D. C., and James K. Polk, of New York City, on the brief), for plaintiff.

James K. Polk, of New York City (Robert E. Coulson, of New York City, on the brief), for Consolidated Edison Co. of New York, Inc., amicus curiae.

Hubert L. Will, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and JONES, MADDEN, WHITAKER, and LITTLETON, Judges.

JONES, Judge.

Plaintiff paid taxes on electrical energy under Section 616 of the Revenue Act of 1932,[1] and seeks to recover them on the ground that they were erroneously assessed and collected.

The facts as stipulated by the respective parties are adopted as the essential facts of this case, with some additional findings in respect to Treasury decisions and regulations.

The issue is whether plaintiff's use of electrical energy is commercial consumption as defined in the quoted provision of the Revenue Act.

Plaintiff asserts its business is industrial or in a field between industrial and commercial and therefore without the scope of the statute. Defendant insists that the business is predominantly commercial.

Plaintiff operated a refrigerating system in the City of St. Louis. It used a fluid known as anhydrous ammonia, which could be readily liquefied, under compression, with cooling water. When the pressure was released it vaporized thus absorbing heat. The process of liquefaction and evaporation of the ammonia was repeated, thus making a continuous cycle of operation with the same commodity. The refrigerating system was operated by electrical energy.

There were three phases to the business: (1) the manufacture and sale of ice; (2) the manufacture, distribution and sale of refrigeration through pipe lines, the refrigeration being used for cold storage boxes of produce dealers, for drinking water, for the air of buildings and other needed purposes; and (3) the refrigeration of plaintiff's warehouses located in various parts of the City of St. Louis in which were stored many kinds of perishable commodities.

Section 616 (a) of the Revenue Act of 1932, 47 Stat. 169, 266, is as follows:

"There is hereby imposed a tax equivalent to 3 per centum of the amount paid on or after the fifteenth day after the date of the enactment of this Act, for electrical energy for domestic or commercial consumption

[1] Sec. 616.

"(a) There is hereby imposed a tax equivalent to 3 per centum of the amount paid on or after the fifteenth day after the date of the enactment of this Act, for electrical energy for domestic or commercial consumption furnished after such date and before July 1, 1934, to be paid by the person paying for such electrical energy and to be collected by the vendor.

"(b) Each vendor receiving any payments specified in subsection (a) shall collect the amount of the tax imposed by such subsection from the person making such payments, and shall on or before the last day of each month make a return, under oath, for the preceding month, and pay the taxes so collected, to the collector of the district in which his principal place of business is located, or if he has no principal place of business in the United States, to the collector at Baltimore, Maryland. Such returns shall contain such information and be made in

such manner as the Commissioner with the approval of the Secretary may by regulation prescribe. The Commissioner may extend the time for making returns and paying the taxes collected, under such rules and regulations as he shall prescribe with the approval of the Secretary, but no such extension shall be for more than 90 days. The provisions of sections 771 to 774, inclusive, shall, in lieu of the provisions of sections 619 to 629, inclusive, be applicable in respect of the tax imposed by this section.

"(c) No tax shall be imposed under this section upon any payment received for electrical energy furnished to the United States or to any State or Territory, or political subdivision thereof, or the District of Columbia. The right to exemption under this subsection shall be evidenced in such manner as the Commissioner with the approval of the Secretary may by regulation prescribe." 47 Stat. 169, 266.

furnished after such date and before July 1, 1934, to be paid by the person paying for such electrical energy and to be collected by the vendor."

When the framework of plaintiff's business, with all its ramifications, is laid alongside the terms of the statute, it appears to come rather clearly within the taxable provisions.

The wording of the statute is very simple. It levies a tax equivalent to 3 per centum of the amount paid for electrical energy for domestic or commercial consumption.

Through its system of refrigeration the plaintiff cools the specially constructed and insulated cooling rooms in its own public refrigerated warehouses, and cools similar rooms in those of its customers in the City of St. Louis. It also manufactures ice which is sold in the St. Louis area.

Vegetables, fruits, dairy products, fish and other perishable products from a number of different states are stored in the warehouses and after storage are reshipped to points in various states. Its dealings are with wholesalers and retailers dealing in carload lots and not with individual consumers. Plaintiff solicits storage business from practically every state by direct contact, by mail and through national advertising.

When the business is considered as a whole, its activities being necessarily woven together, we think it is predominantly commercial in its nature. No separate meter was maintained for the part that was industrial and there is no satisfactory showing as to the amount of electrical energy consumed in that phase of the business.

It is earnestly insisted by plaintiff that there is a zone between commerce and industry and that plaintiff's business in the main is within this twilight zone.

There is no such distinction written into the terms of the taxing provisions. The only exception named in the statutes is energy furnished the Government or political subdivisions thereof.

■ True, Treasury Regulations 42 recognize certain named activities as neither commercial nor industrial within the meaning of the act, but such regulations do not name the type of business actively involved in this case as falling between the two classifications. Besides, regulations may not serve to change the provisions of a statute.

Plaintiff insists that the intention of the Congress, as reflected in the history of the legislation, was to reach only individual consumers and the small business concerns and not users on a large scale.

The discussions in the Congress covered a wide range. Many individual statements were made. These are quoted in extenso by both parties with conflicting interpretations. However, the Conference Report, which was made by a Joint Conference Committee representing both the Senate and the House, and which was the last committee explanation before the final vote was taken, contained the following explanation of the taxing provision which is involved here:

"The House recedes with an amendment substituting a tax of 3 percent of the price paid for electrical energy for domestic or commercial use (*as distinguished from industrial use*), to be paid by the purchaser and collected by the vendor, with necessary administrative provisions and an exemption in the case of electrical energy sold to the United States, any State or Territory or political subdivision thereof, or the District of Columbia." [Italics supplied.]

If any ambiguity existed and any explanations were needed apart from the language of the statute, this final Joint Conference Committee Report makes it clear that it was the intention that the term "commercial" should have a meaning broader than the restricted sense which plaintiff would have us apply. It explains that the tax applies to commercial as distinguished from industrial use. It then exempts only electrical energy sold to the government, national or state, or a political subdivision thereof.

We may add that this seems the natural construction of the wording of the statute.

The use of the two terms by way of contrast followed by the reference to political subdivisions as the only named exemption would seem to preclude the intermediate classification which plaintiff attempts to read into the statute.

It hardly seems necessary to go behind the clear wording of the statute. Certainly it is unnecessary to go behind the Joint Conference Committee Report into the maze of discussion and interpretation by individual members of the Congress when the statute itself, which is the final product of their labors, is couched in simple language clearly expressed.

484

We think some of the confusion has arisen from the effort on the part of the administrative unit to establish an intermediate field between commerce and industry. This makes the problem more difficult. Since there are no definite calls, the construction of two dividing lines instead of one is made necessary, and the extent of such field, if established, can be measured only by the somewhat varying use of otherwise well-known words.

█ In the general understanding commerce and industry cover the entire business field[2] and while it is sometimes difficult to know whether a border-line business falls mainly in the field of commerce or industry it is far less difficult than to attempt to establish shadowy lines. It is far less complicated to follow the generally accepted meaning of the terms which are used in the taxing statute.

█ This conclusion is further strengthened by the wording of the Act of June 16, 1933, 26 U.S.C.A. Int.Rev.Acts, page 615, in which Section 616 is reenacted with only one change pertaining to exemptions, namely, the exemption of publicly owned electric and power plants. The inclusion of this exemption indicates the exclusion of other similar exemptions. While the Act of 1933 has no application to the period involved in the instant case, the naming of the exemption supports the conclusion that the Congress had no thought of establishing the intermediate business field for which plaintiff contends.

█ Churches, charitable, educational, and other nonprofit institutions, as such, would not be subject to the tax, regardless of whether such field were established, since they fall wholly without the realm of business.

█ The Commissioner of Internal Revenue has a most difficult task in interpreting the numerous taxing statutes and the many statutory changes that are necessarily made from time to time by the Congress to fit the vast and rapidly changing business structure of the country. But we must construe the language of the act as we find it.

It is contended by plaintiff that Congress after the issuance of Treasury Regulations 42 repeatedly re-enacted the tax law without substantial change in this provision, thus confirming the Commissioner's action. The contention loses much of its force in the light of the numerous rulings, decisions, and exceptions that have been made necessary by the complicated and widely varying nature of the many businesses affected. But if this viewpoint is accepted the fact remains that the Commissioner of Internal Revenue, who prepared the regulations, also held that plaintiff's business did not fall within the nontaxable intermediate field. It would be rather illogical to hold that the Government would be bound by the Commissioner's construction limiting the application of the statute as expressed in the regulations, and at the same time disregard the Commissioner's interpretation of those limits.

█ Even if the term "commercial" were construed in the narrower sense for which plaintiff contends, it would not necessarily follow that it would be exempt from the tax. With the single exception of the manufacture of ice, plaintiff's activities are predominantly commercial. Its servicing is commercial. Its business is primarily commercial. It follows the product in the process of distribution. Its activities are an integral part of the current or stream of commerce. Thus, regardless of whether the Commissioner of Internal Revenue properly construed the act in undertaking by regulation to exempt certain businesses on the ground that they are neither industrial nor commercial, the plaintiff's business is subject to the tax.

It follows that plaintiff's petition must be dismissed and it is so ordered.

---

[2] Jordan v. K. Tashiro, 278 U.S. 123, 127, 128, 49 S.Ct. 47, 73 L.Ed. 214.